Filed 3/16/16  Anderson v. Blue Cross of California CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| A.K. ANDERSON, | |
| Plaintiff and Appellant, | E061976 |
| v. | (Super.Ct.No. CIVDS1311953) |
| BLUE CROSS OF CALIFORNIA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Sachs, Judge.  Affirmed in part; dismissed in part.

A.K. Anderson, in pro. per., for Plaintiff and Appellant.

Foley & Lardner, Eileen R. Ridley, Alan R. Ouelette and Kimberly A. Klinsport for Defendant and Respondent Blue Cross of California.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Chief Assistant Attorney General, Kristin G. Hogue, Assistant Attorney General, Richard J. Rojo and Raymond L. Fitzgerald, Deputy Attorneys General, for Defendant and Respondent State of California.

1

Youngerman & McNutt and Stephen Youngerman for Defendant and Respondent Everest National Insurance Company.

Thompson & Colegate and Susan Knock Brennecke for Defendant and Respondent Community Hospital of San Bernardino.

Severson & Werson, Jan T. Chilton, Jonah S. Van Zandt and Kerry W. Franich for Defendant and Respondent Bank of America, N.A.

In a First Amended Complaint (FAC), plaintiff and appellant A.K. Anderson (Anderson) sued (1) Dave Jones, Insurance Commissioner; (2) Blue Cross of California (Blue Cross); (3) the State of California; (4) Everest National Insurance Company (Everest); (5) Loma Linda University Medical Center (LLUMC); (6) Pinnacle Medical Group (Pinnacle); (7) Jesse Guadiz, M.D. (Guadiz); (8) Community of San Bernardino Hospital (the Hospital); (9) the County of San Bernardino (the County); and (10) Bank of America, N.A.[1]  Anderson brought two causes of action:  (1) a quit claim action (claim on behalf of the government) for violating the False Claims Act (Gov. Code, § 12650);[2] and (2) a medical malpractice cause of action.

---

[1] In the FAC, Anderson (1) erroneously named Blue Cross as Anthem Blue Cross; (2) incorrectly named a variety of state agencies, rather than naming the agencies collectively as the State of California (Gov. Code, §§ 811.2, 940.6)—he named (a) the Department of Industrial Relations, (b) the Department of Health and Human Services, (c) the Department of Motor Vehicles, (d) the Department of Industrial Relations Division of Occupational Safety and Health, (e) the California Medical Board, and (f) the Department of Labor; (3) erroneously named Everest National Insurance Company as Everest National Insurance Group; and (4) erroneously named Bank of America, N.A. as Bank of America, N.T. & S.A.

[2] All further statutory references are to the Government Code unless indicated.

The trial court sustained the demurrers of (1) Blue Cross; (2) the State of California; (3) Bank of America, N.A.; (4) Dave Jones; (5) LLUMC; (6) the County; (7) the Hospital; and (8) Everest. At the time of the ruling on the demurrers, Pinnacle and Guadiz were in default.

Anderson raises four arguments on appeal. First, Anderson contends the trial court erred by sustaining the demurrers of all the parties because Pinnacle and Guadiz were in default at the time the time court ruled on the demurrers. Second, Anderson asserts the trial court erred by sustaining the demurrers to the FAC when Anderson still had time remaining to file a Second Amended Complaint. Third, Anderson contends it was impossible to allege, in the FAC, that he had served the complaint upon the Attorney General, and therefore the trial court erred by requiring such an allegation in the FAC. Fourth, Anderson asserts the trial court had the authority to hear his motion for new trial. To the extent Anderson is appealing a judgment related to Pinnacle and Guadiz, we dismiss that portion of his appeal. Otherwise, we affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

A.    FAC

Anderson's FAC is somewhat disjointed, but his allegations, as we understand them, are as follows: On June 6, 2006, Anderson argued with his wife, who was drunk. Anderson then went to lie down. When Anderson awoke, he was being transported to the Hospital. At the Hospital, Guadiz diagnosed Anderson as suffering from a seizure disorder. Anderson asserts this was a misdiagnosis. Due to the misdiagnosis, Anderson lost his driver's license and his job as a machinist.

3

On August 10, 2006, defendant was physically assaulted at his place of work. Anderson awoke at LLUMC "with staple-insert pins inserted in his head." Anderson asserted the injuries from the assault were erroneously ascribed to his misdiagnosed seizure disorder.

Anderson, in his false claims cause of action against all defendants, alleged, "Because of the deliberate misdiagnosis, the State, and the other private and public entities have spent state funds to make this false diagnosis, in order to help Defendant Anthem Blue Cross, Defendant Guadiz, and other persons and entities profit from the false diagnosis, and false invasion of privacy." Anderson sought damages on behalf of the State of California.

Anderson's second cause action was against Guadiz for medical malpractice. Anderson asserted Guadiz incorrectly diagnosed him as suffering a seizure disorder. As a result of the misdiagnosis, Anderson lost his driver's license and suffered distress.

B.     BANK OF AMERICA'S DEMURRER

In the FAC, under the false claims cause of action, Anderson alleged the Department of Motor Vehicles, on his driver's license, (1) misspelled the name of the street on which he lived; (2) misspelled his name; and (3) included an incorrect driver's license number. As a result of the license errors, Bank of America N.A. (Bank of America) "misdirected his direct deposits to his bank account with the wrong address. [Anderson] believe[d] that there was a class action suit around 2006-2007, but did not remember the nature of said suit until 2013."

4

Bank of America demurred. Bank of America asserted, "Misdirected deposits are not a basis for a False Claims Act cause of action." Further, Bank of America argued False Claims Act allegations must meet heightened pleading requirements, and Anderson's allegations were too vague to meet those requirements. In particular, Bank of America could not decipher the amount of money at issue and which employees, officers, or directors were alleged to have acted unlawfully.

### C.   THE HOSPITAL'S DEMURRER

The Hospital demurred. First, the Hospital asserted Anderson's allegations were "so incoherent and disjointed as to make it impossible" to understand the FAC. Second, the Hospital argued the FAC did not state sufficient facts to understand what act by the Hospital allegedly damaged Anderson, either in the false claims or medical malpractice causes of action.[3] Third, the Hospital contended both causes of action were barred by the statute of limitations. Anderson's original complaint was filed on September 30, 2013. The Hospital contended Anderson waited seven years to file his complaint, thus making his lawsuit untimely.

### D.   THE COUNTY'S DEMURRER

As set forth *ante*, in the FAC Anderson alleged Guadiz and "medical staff" misdiagnosed defendant as suffering a seizure disorder. Also in the FAC, Anderson alleged that on May 5, 2006, he went to Pinnacle to be treated for a cough. Pinnacle referred Anderson to Arrowhead Regional Medical Center (ARMC). While at ARMC,

---

[3] Hospital was not named as a defendant in the medical malpractice cause of action.

5

County medical staff X-rayed Anderson and found a chest lesion; however, without Anderson's knowledge, the medical staff also X-rayed his head.

The County demurred to the FAC. The County addressed the allegations against the "medical staff" at both Pinnacle and the Hospital. First, the County alleged Anderson failed to file a government tort claim prior to filing his lawsuit and that too much time had lapsed for him to remedy that issue. (§ 911.2, subd. (a) [six month and one year statutes of limitation].) Second, the County asserted a public agency cannot be liable under the False Claims Act. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1199 [agencies of state and local government are not "persons" subject to suit under the False Claims Act].)

E.     EVEREST

In the FAC, Anderson alleged Everest failed to fulfill its duties. Everest demurred to the FAC.[4] From context in the demurrer, we gather Everest was the workers' compensation insurer for Anderson's employer. In the FAC, Anderson alleged he received inadequate workers' compensation benefits for four years.

Everest raised two arguments in its demurrer. First, Everest asserted any claims about workers' compensation benefits fell within the exclusive jurisdiction of the Workers' Compensation Appeals Board, and thus, the trial court lacked jurisdiction over the matter. (Labor Code, §§ 5300-5301.) Everest explained that "on or about August 18, 2018 [*sic*] the State of California Workers' Compensation Appeals Board

_____

[4] The demurrer reflects it is a demurrer to Anderson's Second Amended Complaint. We infer this is an error, and it is a demurrer to the FAC.

6

filed an Order Approving [the] Compromise and Release of [Anderson's] worker[s'] compensation claims against Everest." Anderson's claims were released in exchange for $2,000 from Everest. Second, Everest argued that if the trial court did have jurisdiction, then Anderson exceeded the one year statute of limitations. (Labor Code, § 5405.)

## F. BLUE CROSS'S DEMURRER

In the FAC, under the False Claims Act cause of action, Anderson alleged, "In conspiring, as evidence is being discovered, Defendant Anthem Blue Cross with its intent on making a profit, engaged in a tortious process that infringed on [Anderson's] life and health by mislabeling and profiling injuries from a physical assault as 'seizures,' resulting in employment matter misconduct, toll delays, defamatory statements and proceedings, harassment by State and local officials, etc."

Blue Cross demurred to the FAC. Blue Cross described the FAC as "bizarre" and "difficult to understand." Blue Cross asserted Anderson failed to state sufficient facts for a False Claims Act violation because he did not allege Blue Cross submitted any claim, much less a fraudulent claim, to the government.

## G. STATE OF CALIFORNIA'S DEMURRER

In the FAC, Anderson alleged the Department of Motor Vehicles made three mistakes on his driver's license, including his address, name, and driver's license number. Anderson asserted "others used that name and License Number to justify misdiagnosing [Anderson], depriving [Anderson] of his Driver's License to disable [Anderson] as a person that could drive, and to deprive him of his job as a machinist."

7

Also in the FAC, Anderson asserted he suffered due to "the inability and gross derelict of CAL-OSHA, the California Medical Board, the California Department of Labor, and other State Agencies to investigate the matter. In other words, instead of diagnosing an injury from a physical assault at work, the State, insurance companies, and other private and public entities deliberately mislabeled the assault as 'seizures.'"

The State of California (the State) demurred to the FAC. The State asserted (1) the FAC lacked sufficient facts to state a cause of action; (2) Anderson failed to file a government tort claim prior to filing his lawsuit; (3) the State cannot be liable under the False Claims Act (*Wells v. One2One Learning Foundation*, *supra*, 39 Cal.4th at p. 1199 [agencies of state and local government are not "persons" subject to suit under the False Claims Act]); and (4) the FAC is uncertain because "it is replete with non-sequiturs about false arrest, assault, misdiagnosed medical conditions, labor, banking, and driver's license issues dating back to 2006."

## H.    INSURANCE COMMISSIONER'S DEMURRER

Insurance Commissioner Dave Jones (the Commissioner) demurred to the FAC. The Commissioner asserted (1) naming him in his official capacity in a lawsuit filed on behalf of the State was a misjoinder of a party; (2) the FAC failed to state facts sufficient to constitute a cause of action against the Commissioner; (3) the FAC is "uncertain, ambiguous and unintelligible as applied [to] the Commissioner"; and (4) Anderson failed to allege he filed a government tort claim prior to his lawsuit.

I.      RULINGS

On June 18, 2014, the trial court sustained the Hospital's demurrer.  As to the False Claims Act cause of action the court granted 30 days leave to amend.  As to the medical malpractice cause of action the court denied leave to amend.[5]  The court also advanced the hearing dates for the remaining demurrers.

On July 7, Anderson, Bank of America, the Hospital, the Commissioner, the County, and Everest were present for the hearing.  The trial court explained that, at a prior hearing, it had informed Anderson that in order to bring a qui tam action he must submit a letter to the Attorney General with information about the case and a proposed copy of the complaint.  Then, if the Attorney General "thought it was appropriate," she would grant permission for Anderson to file his lawsuit.  Anderson said he did not have a letter from the Attorney General.

The trial court sustained the demurrers as to the False Claims Act cause of action, as to all parties, without leave to amend.  The trial court sustained the demurrers because Anderson failed to receive authorization from the Attorney General.  However, the trial court explained that if Anderson obtained permission from the Attorney General at a later date, then the court would allow him to file another lawsuit.

In regard to the Commissioner, the State, and the County, the trial court also sustained the demurrers on the False Claims Act cause of action because "you can't bring an action for false claims as to public entities."

_____

[5] As indicated *ante*, the Hospital was not a defendant in the medical malpractice cause of action.

9

As to the medical malpractice cause of action, the trial court asked Anderson if anything occurred between August 2006 and September 2013 that would somehow cause the statute of limitations not to have expired.[6]  Anderson responded that, in August 2006, at LLUMC, he was given medication for his misdiagnosed seizure disorder; and either (1) that medication was contaminated, or (2) the medication caused Anderson to be contaminated—the wording in the record is unclear.  Anderson said the last time he was at LLUMC was in 2006.  The trial court sustained the demurrer on the medical malpractice cause of action as to LLUMC without leave to amend because the statute of limitations had expired.[7]

The trial court then addressed ARMC, which is part of the County.  Anderson explained he was contaminated by epilepsy medication at ARMC, and he was last at ARMC in February 2011 for surgery.  The trial court asked if defendant filed a government tort claim form prior to his lawsuit.  Anderson responded that he was unable to retain a lawyer.  The trial court sustained the demurrer on the medical malpractice cause of action as to the County without leave to amend because Anderson did not file a government tort claim form.[8]  The trial court noted that even a late claim would have needed to have been filed by February 2012, so Anderson could not remedy the problem.

---

[6] The defendants in the malpractice cause of action were Guadiz and Does 1 through 100.  At the time of the July 7 hearing, Guadiz was in default.

[7] LLUMC was not a defendant in the medical malpractice cause of action.

[8] The County was not a defendant in the medical malpractice cause of action.

As to the Hospital, the trial court recalled that it had already sustained the demurrer without leave to amend on the medical malpractice cause of action, and then explained that "based on my rulings here today" the Hospital's demurrer on the false claims cause of action would be sustained without leave to amend. The Hospital reminded the court that it had previously granted Anderson leave to amend the false claims cause of action. The trial court responded, "Correct. That was for Mr. Anderson to come here today to show me that he has a letter from the Attorney General's Office or he's complied. And he has not. He's told us that in court. So basically, for the purposes of this case, the demurrers of all parties are sustained without leave to amend because Mr. Anderson has not satisfied the jurisdictional element of his cause of action; that is, that he has permission to proceed against any party in this case." The trial court further explained that it sustained the demurrers without leave to amend because Anderson had not explained how he could fix the government tort claims problems and the statute of limitations problems.

J.     CLERK'S QUESTION

On July 8, 2014, a trial court clerk submitted a written question to the trial judge. The clerk explained that Anderson insisted he was granted leave to amend his first cause of action at the June 18 hearing, but the minutes from the July 7 hearing reflected the case was dismissed. The clerk asked if the court should accept Anderson's Second Amended Complaint.

The trial court responded, "Reject. On July 7, 2014, [Anderson] was advised in court that he failed to establish that he had made a request to the [A]ttorney [G]eneral's

11

office and had received authorization to proceed with his false claim act cause of action. Based on this, the demurrer was sustained without leave to amend as to all parties."

### K.    MOTION FOR NEW TRIAL

On August 1, 2014, Anderson filed a Motion for New Trial. Anderson asserted the July 7 group hearing on the demurrers to the FAC should have been taken off calendar because, on June 24, Anderson attempted to file his Second Amended Complaint (SAC), but was "dissuaded" by a deputy clerk. Anderson had served his SAC on the defendants, but not filed it with the court. Anderson asserted the trial court erred by issuing a premature order on defendants' demurrers when there was a conflicting June 18 order in place authorizing the filing of a SAC.

Blue Cross opposed Anderson's motion for a new trial. Blue Cross asserted the motion should be denied because Anderson failed to give Blue Cross notice of the motion. Blue Cross contended it learned of the motion when the trial court mailed it a notice about the hearing date.

The County also opposed Anderson's motion. First, the County asserted the new trial motion was problematic because there had not been a trial; rather, the court had ruled on demurrers, i.e., issues of law. Second, the County contended the demurrer hearings addressed the FAC, which was the operative pleading at the time of the hearing because Anderson had not filed his SAC. Third, the County contended the SAC suffered from the same problems as the FAC, in particular (a) Anderson was still suing the County for False Claims Act violations when a government agency cannot be sued for such; (b) Anderson had not alleged he obtained a letter from the Attorney General

12

authorizing his qui tam false claims cause of action; and (c) for the malpractice cause of action, Anderson had not alleged he filed a government tort claim form. The Hospital and Everest also opposed the motion for new trial.

On September 3, 2014, the trial court held a hearing on Anderson's motion for a new trial. The trial court explained that a motion for new trial was inappropriate given that there had not been a trial; however, the court exercised its discretion to treat the motion as a motion for reconsideration. The trial court asked Anderson if he had received permission from the Attorney General for the false claims cause of action. Anderson responded, "I have not."

The trial court explained that because (1) there were no new facts or law, (2) Anderson had not received authorization from the Attorney General, and (3) there were statute of limitations problems with the medical malpractice cause of action, the court decided to deny the motion. Anderson responded, "Well, I'd like to just proceed to schedule a type of trial—." The trial court explained that Anderson would need to file an appeal.

## DISCUSSION

### A.    MEDICAL MALPRACTICE

#### 1.    *PROCEDURAL HISTORY*

The FAC reflects Guadiz and Does 1 through 100 are the named defendants in the medical malpractice cause of action. On May 2, 2014, Pinnacle and Guadiz's attorney sent a letter to Anderson. In the letter, the attorney explained that he tried to file a demurrer in the case on May 1, but it was rejected because a default was entered

13

on April 29. The attorney requested Anderson contact him about setting aside the default.

On May 14, 2014, Pinnacle and Guadiz filed a joint motion for an order vacating and setting aside their default. The motion was calendared for August 6. On July 7, the trial court said, "[T]he demurrers of all parties are sustained without leave to amend." The trial court vacated all future hearings. Thus, the hearing regarding Pinnacle and Guadiz's motion for relief from default was vacated. The defendants who filed demurrers submitted separate judgments that the trial court signed.

2. *ANALYSIS*

Anderson contends the trial court erred by sustaining the demurrers "of all the parties" because Pinnacle and Guadiz were the only defendants named in the medical malpractice cause of action, they did not file demurrers, and they were in default at the time of the July 7 group ruling on the demurrers.[9]

The record does not include a judgment in favor of Pinnacle and Guadiz. We presume Pinnacle and Guadiz did not submit a judgment for the trial court's signature because (1) they did not file demurrers, and (2) they were in default. Without a signed judgment, this court cannot review any issues that may have occurred involving Pinnacle and Guadiz because there is not a judgment from which Anderson may take an appeal as to these two defendants. (*Adohr Milk Farms, Inc. v. Love* (1967) 255 Cal.App.2d 366, 368-369; Code Civ. Proc., § 581d [all dismissals must be in the form

_____

[9] Pinnacle is not named as a defendant in the medical malpractice cause of action.

14

of a signed order].)  Accordingly, we cannot examine whether the trial court erred in regard to these two parties.[10]

## B.    CONFLICTING RULINGS

Anderson contends the trial court erred by sustaining defendants' demurrers without leave to amend on July 7, when, on June 18, the court granted Anderson 30 days leave to amend his false claims cause of action.  Anderson asserts that when the trial court granted him leave to amend, the remaining demurrer hearings should have been vacated.

For the sake of judicial efficiency, we will assume Anderson is correct.  We will assume the trial court erred by proceeding to rule on the demurrers to the FAC when Anderson still had time remaining to file his SAC.

We now examine whether that ruling was harmless.  (Cal. Const, art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [no judgment shall be set aside unless it resulted in a miscarriage of justice].)  An error is not prejudicial if, after examining the entire record, it is reasonably probable a result more favorable to the appellant would have occurred absent the error.  (*Cassim*, at p. 800.)

It appears from arguments in the record that the SAC was substantially similar to the FAC.  On appeal, Anderson has not asserted he was prejudiced by the error. Anderson does not contend he received authorization from the Attorney General for the

---

**10**  Because Guadiz and Does 1 through 100 were the only defendants named in the medical malpractice cause of action, the remainder of our Discussion section will intentionally omit analysis of the medical malpractice cause of action.

False Claims Act cause of action. Given that Anderson has not asserted he was prejudiced by the assumed error and that it appears from context in the record that the SAC was substantially similar to the FAC, we conclude any error was harmless.

C.      SERVICE ON THE ATTORNEY GENERAL

Anderson contends it was impossible for him to allege that he served a letter on the Attorney General because the law requires the Attorney General be sent a copy of the filed complaint. Thus, procedurally, Anderson could not allege he served the Attorney General until after he filed the complaint, which meant such an allegation could not be in the complaint.

Anderson's argument relies upon section 12652, subdivision (c), which provides a qui tam plaintiff must file his complaint in camera and the complaint may remain under seal for up to 60 days. (§ 12652, subd. (c)(2).) On the same day the complaint is filed, the qui tam plaintiff must serve the Attorney General with a copy of the complaint and a written disclosure of substantially all the relevant evidence. (§ 12652, subd. (c)(3).) The Attorney General has 60 days from receiving the complaint to decide whether to intervene in the action. (§ 12652, subd. (c)(4).) The Attorney General must notify the trial court whether it intends to intervene in the action or if it declines to proceed with the case. (§ 12652, subd. (c)(6).)

Anderson filed his original complaint on September 30, 2013. Anderson's FAC was filed approximately five months later on March 10, 2014. In the FAC, Anderson failed to allege he had served the Attorney General. At the July 7, 2014, hearing on the demurrers, Anderson did not allege he had served the Attorney General. In Anderson's

16

Appellant's Opening Brief and Appellant's Reply Brief, Anderson writes, "After he sent the Complaint, he waited 60 days, then he filed the First Amended Complaint." Anderson does not provide a record citation for this sentence. As a result, it is unclear to whom Anderson sent the complaint. Further, it appears from the trial court's questions at the July 7 hearing, that the trial court never received a notice from the Attorney General regarding a decision to proceed with the case or decline the case. Thus, it appears Anderson did not serve the complaint on the Attorney General. As a result, we conclude there was no error—the FAC should have included the allegation that the original complaint was served on the Attorney General because the FAC was filed more than five months after the original complaint, thus it was possible to include such an allegation.[11]

D.      MOTION FOR NEW TRIAL

Anderson contends the trial court had the authority to hear his motion for new trial. Anderson is correct that the trial court did not need to treat his motion for a new trial as a motion for reconsideration; a motion for new trial is proper following the sustaining of a demurrer. (*Carney v. Simmonds* (1957) 49 Cal.2d 84, 90-91.) Anderson provides no argument concerning error with his assertion regarding the trial court's authority. For example, he does not explain how hearing the motion as one for new

---

[11] Within this section of his opening and reply briefs, Anderson writes, "Furthermore, if Judge Sachs formerly worked for the County shouldn't he disqualify himself?" At the hearing on June 18, 2014, Judge Sachs disclosed his prior employment with the County. The parties had no objection to the case proceeding in Judge Sachs's department.

trial, rather than one for reconsideration, could have impacted the trial court's decision. Accordingly, we agree with his assertion that the trial court had the authority to hear the motion as a motion for new trial, but conclude there was no error, because no error is asserted.

## DISPOSITION

To the extent Anderson is attempting to appeal from a judgment in favor of Guadiz and Pinnacle, that portion of the appeal is dismissed. In all other respects, the judgments are affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

McKINSTER _____

Acting P. J.

CODRINGTON _____

J.